IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:12-CR-0054(02) |
| | § | |
| MARCOS ANTONIO MONARREZ- | § | |
| MENDOZA | § | |

# REPORT AND RECOMMENDATION
# TO DENY DEFENDANT'S MOTION TO SUPPRESS
# IN AND OUT-OF-COURT IDENTIFICATION

Came for consideration the above-entitled motion to suppress filed January 28, 2013 by defendant MARCOS ANTONIO MONARREZ-MENDOZA. On February 21, 2013, an evidentiary hearing was held. Neither party has filed any post-hearing submission or brief on this motion. Upon consideration of the pleadings, the evidence presented at the hearing, and arguments of counsel, the Magistrate Judge is of the opinion defendant's motion to suppress the out-of-court identification, or any subsequent in-court identification, should be DENIED.

## I.
## FACTUAL BACKGROUND

On November 16, 2012, an Express Mail parcel was removed from the U.S. Postal mail stream in Lubbock, Texas. The parcel, bearing a tracking number, was addressed to Stephanie Valdez, at 701 S. Arthur Street, in Amarillo, Texas. A drug detection canine alerted to the presence of illegal narcotics inside the Express Mail parcel. Jason Russell, a Postal Inspector with the United States Postal Inspection Service obtained a federal search warrant for the parcel, and upon opening

the parcel, discovered methamphetamine weighing approximately 16 ounces.

On November 19, 2012, plans were made for a controlled delivery of the parcel containing methamphetamine to be made by law enforcement to 701 S. Arthur Street. Amanda Hernandez, the postal carrier assigned to the route which included the 701 S. Arthur address, reported to work at 7 a.m. that day and was told to "stay away" from the Arthur address until she was advised otherwise. While completing her route that day, Hernandez drove by the 701 S. Arthur address, a corner lot, several times between 8:20 a.m. and noon. From approximately 9:00 a.m. to 11:00 a.m., an individual sat in a gold car with dealer tags in the vacant lot next to 701 S. Arthur.

At 11:52 a.m., postal carrier Hernandez delivered mail to a business approximately two blocks down from, and within view of, the Arthur Street address. As she was about to leave the business, Hernandez observed a man approaching her vehicle. Hernandez exited her postal vehicle and the man asked Hernandez, in broken English, if she had "anything" for 701 S. Arthur. Hernandez replied in English that she had already delivered everything she had for that address. Hernandez described the exchange with this man as taking place in broad daylight, at a distance of about two feet apart. The man then climbed into a Ford F150 truck with a trailer attached and left. Hernandez immediately called her supervisor and reported the encounter to her supervisor. Hernandez completed her route and returned to postal headquarters. Upon her arrival, the supervisor asked Hernandez to step into a private office and write a statement describing the encounter. Hernandez's statement stated:

> On Monday November 19, 2012, I saw a golden car with dealer tags sitting at the vacant lot right next to 701 S. Arthur. It was there all morning and all afternoon. Around 12:00 pm I arrived at 1023 SE 10th which is Ruiz Transmission or Tire Place. After I delivered the mail a light skinned Hispanic/Mexican male maybe in his late 40's, early 50's approached me. He had light eyes, thinning hair, about 5' 9" and he had a slight limp. He didn't speak very good English but had asked me if I

had mail for 701 S. Arthur, which I replied no. After that I called Robin Henry and told her I had him approach me asking for mail for 701 S. Arthur. After [] I saw him leaving 1023 SE 10th he was in a light Ford F-150 looking truck with a trailer hitched to it. After seeing him in that truck I had remembered seeing that same truck earlier in the morning following me around the 300-400 Blocks of S. Garfield. After seeing him pull out of Ruiz, 1023 SE 10th, I also saw him going up Houston St. about 12:45 then seeing him turn eastwards on 10th. After that I didn't see the truck any more.

Meanwhile, at approximately 1:20 p.m., Postal Inspector Russell attempted the controlled delivery at the 701 S. Arthur address. When Russell approached the front door of the residence, he was approached by a person later identified as Jaime Caraveo-Chacon, who indicated he would take delivery of the parcel. Upon his signing for the parcel, Russell gave Caraveo-Chacon the parcel, and Caraveo-Chacon took the parcel to a vehicle parked in front of 701 S. Arthur and drove away with the parcel. After a high speed chase by law enforcement, Caraveo-Chacon was apprehended and the parcel was recovered.

From approximately 8:00 a.m. - 2:00 p.m. on November 19, 2012, Caraveo-Chacon received approximately 14 phone calls from a phone number later identified as registered to a Marco Monarrez-Mendoza. Eight (8) of these phone calls were received from 1:24 p.m. - 2:05 p.m. During his post-arrest interview, Caraveo-Chacon stated Marcos Monarrez-Mendoza, his employer, had instructed him to pick up the parcel at 701 S. Arthur. On November 20, 2012, Caraveo-Chacon was charged by complaint with possession with intent to distribute methamphetamine. A subsequent search of Monarrez-Mendoza's phone records reflected the calls to Caraveo-Chacon.

During his investigation of this matter, Russell learned that an Osmer Perez, an individual who also worked for Monarrez-Mendoza, had accepted delivery of a similar parcel addressed to Stephanie Valdez at 701 S. Arthur on October 11, 2012. Perez had previously lived at the 701 S. Arthur address. The current resident of 701 S. Arthur gave a statement that she observed Perez

receive a package in October 2012 and give it to Monarrez-Mendoza who, at the time, was driving a silver truck.

In an attempt to identify the man who had approached Hernandez on November 19, 2012, asking about mail delivery to the Arthur address, Russell requested the Texas Department of Public Safety to create two (2) 6-person photo arrays. The first array included a photo of Perez and five other uninvolved individuals, and the second contained a photo of Monarrez-Mendoza and five other uninvolved individuals.

On December 13, 2012, Russell, while being observed by Marcus Daley, another United States Postal Inspector, advised Hernandez he was going to present her with two lineups and wanted to know if the individual who approached her on November 19, 2012, asking about a parcel delivery to 701 S. Arthur Street was or was not present in either one. Russell advised Hernandez the photo arrays may or may not contain a photo of the man who approached her. Daley did not make any comments and served only as a witness. Russell first showed Hernandez the lineup containing Perez. Hernandez immediately indicated the individuals in the photo array were too young and that the array did not contain a photo of the man who approached her. Russell then showed Hernandez the array containing a photo of Monarrez-Mendoza. Each of the photos in this array reflected men with mustaches. Hernandez indicated there were two photos she was considering, at which point Russell instructed her to just try to recall the day of the event. Hernandez then unequivocally identified Monarrez-Mendoza as the man who approached her on November 19, 2012 inquiring about a parcel to be delivered to 701 S. Arthur Street.

On January 9, 2013, defendant MONARREZ-MENDOZA was charged in a 4-count indictment, with (1) conspiracy to distribute and possess with intent to distribute 50 grams or more

of methamphetamine, (2) possession with intent to distribute methamphetamine, (3) conspiracy to use a communications facility to facilitate a drug trafficking crime, and (4) use of a communications facility to facilitate a drug trafficking crime.

II.
ADMISSIBILITY OF IDENTIFICATION

The Fifth Amendment affords accused individuals due process protection against evidence derived from unreliable identifications which are based upon impermissibly suggestive photographic lineups or identification procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977); *United States v. Guidry*, 406 F.3d 314 (5th Cir. 2005). *See also United States v. Rogers*, 126 F.3d 655, 658 (5th Cir. 1997) (*citing Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In determining whether identification evidence is admissible, courts consider the totality of the circumstances and apply a two-step test. First, the Court must determine whether the identification procedure was "impermissibly suggestive." If it was, the Court must then determine whether the procedure posed a "substantial likelihood of irreparable misidentification." In determining whether there is a substantial likelihood of misidentification, courts consider: (1) the opportunity of the witness to view the individual at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness's prior description of the individual; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188. 199-200 (1972). In making a reliability determination, courts may also consider the strength of other evidence against the defendant. *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977).

In her statement, Hernandez described the man who approached her concerning delivery of a

parcel to 701 S. Arthur as a "light skinned Hispanic/Mexican male," "maybe in his late" 40s or early 50s, with "light eyes" and "thinning hair," about 5' 9," with a slight limp. Hernandez also described the man as not speaking "very good English" and driving a light, Ford F-150 pulling a trailer.

Hernandez was given two (2) photo arrays, each reflecting six (6), fair skinned males, Hispanic in appearance. The first array was of individuals who appear to be in their 20s or 30s. The second array consisted of individuals who appear to be in the 40s or 50s, each with some manner of facial hair. Only Russell and Daly were present when Hernandez was presented the photo arrays. Russell was aware of the suspects in the first and second array. Daly was not. Hernandez was able to handle the photographs, and was instructed the individual may or may not be in either of the photo arrays. Hernandez stated no one suggested to her, implicitly or subtly, who she should pick or that she should even make a positive identification of anyone. Upon viewing the photographs, Hernandez identified the photograph of defendant MONARREZ-MENDOZA as the man who approached her and asked about mail delivery to 701 S. Arthur.

Defendant seeks to suppress Hernandez's identification from the photo spread as well as any in-court identification. Defendant appears to argue the identification procedure utilized here was "impermissibly suggestive" because: (1) Hernandez's description of the man was too general and "non-specific as to any particulars"; (2) every picture in the second photo array, including the defendants, had a mustache even though Hernandez did not indicate the individual had facial hair; (3) Russell, a person aware of defendant's identify, presented the array to Hernandez; (4) Hernandez was presented photo arrays containing only six (6) photos, purportedly in violation of DPS policy; (5) officers who assisted in the arrest of defendant and search of defendant's house

assisted in creating the array; and (6) Russell and Daly were both higher ranking individuals with the Postal Service.

The Court does not find Ms. Hernandez's description was too general. It is true she did not include a mustache in her description, but otherwise the description was specific. In any event, defendant has not demonstrated how the generality or non-specificity of Hernandez's description of the man who approached her concerning mail delivery of a parcel to 701 S. Arthur rendered the identification procedure utilized here "impermissibly suggestive." Nor has defendant demonstrated the use of pictures with mustaches in the second photo array, which included a picture of defendant with a mustache, unduly suggested one photo over another. Although Russell was aware of defendant's identify when he presented the array to Hernandez, there is no evidence his actions or tone favored a choice of defendant's photo. In fact, Russell advised Hernandez the individual may or may not be in either array and to only think back to her experience from that day in making any decision. Defendant has not demonstrated a 6-photo array, whether in violation of DPS policy or not, is impermissibly suggestive. Lastly, Hernandez testified that while Russell and Daly may have been higher ranking individuals with the Postal Service, neither was a direct supervisor of her, and that she did not feel pressure to make an identification or feel her failure to make one would affect her employment. Defendant has not demonstrated the photo arrays, the circumstances surrounding the presentation of the photo arrays, or any other aspect of the identification process utilized here, was suggestive much less impermissibly suggestive. Defendant has not met his initial burden to show the identification should be suppressed.

Defendant also contends the procedure meets the second prong of the test by posing a "substantial likelihood of irreparable misidentification." Testimony at the hearing supports a

finding that Hernandez's identification of defendant's photo was reliable. Hernandez testified she was standing approximately two (2) feet from the individual during the encounter, which took place during broad daylight. Hernandez was clearly in a position to accurately observe defendant. Hernandez testified she knew something was "going down" at the 701 S. Arthur address, was aware someone might approach her concerning that address, and immediately called her supervisor to advise her of the encounter. Hernandez's statement describing defendant as Hispanic, with light colored eyes, and speech reflecting difficulty articulating the English language appears consistent. While defendant may be shorter than "about 5' 9"," there is nothing to indicate his appearance of "late 40s" is inaccurate. Hernandez testified her identification of defendant in the photo spread was based on her memory of the encounter and no other reason, and Hernandez positively identified defendant in court. While 25 days had passed between the time Hernandez observed the individual and identified him in the photo spread (November 19, 2012 to December 13, 2012), such is merely one factor, is not an unreasonable delay, and did not appear to affect her identification of defendant.

More importantly, the strength of the other evidence against defendant supports a determination that Hernandez's identification was reliable. While the defendant may present alternative explanations for the direct evidence, coincidences and other circumstantial evidence present in this case, the strength of the evidence against defendant as it now exists does not support a claim of misidentification.

The undersigned finds the photo array and the identification procedure used in this case were not impermissibly suggestive or conducive to mistaken identity, thereby denying defendant due process of law. Consequently, the undersigned finds the photographic identification of defendant, by witness Hernandez, should not be suppressed.

It is the further opinion of the undersigned that this recommendation does not operate to bar defendant from arguing and/or presenting any admissible evidence at trial. Any evidentiary rulings at trial are for the trial judge.

III.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the motion to suppress in and out-of-court identification filed by defendant MARCOS ANTONIO MONARREZ-MENDOZA be DENIED.

IV.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 1st day of March 2013.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

\* **NOTICE OF RIGHT TO OBJECT** \*

Any party may object to this Report and Recommendation. *See* 28 U.S.C. § 636. This case is set for docket call on Monday, March 18, 2013, and trial on Tuesday, March 19, 2013. **Therefore, all objections must be filed on or before Monday, March 11, 2013.**

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely

file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).