IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 2:12-CR-0054(02) |
| | § | |
| MARCOS ANTONIO | § | |
| MONARREZ-MENDOZA | § | |


**REPORT AND RECOMMENDATION TO GRANT, IN PART, AND
DENY, IN PART, DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Came for consideration the motion to suppress statements filed February 25, 2013, by

defendant MARCOS ANTONIO MONARREZ-MENDOZA.

On February 21, 2013, the undersigned conducted an evidentiary hearing on two (2)

motions to suppress filed by defendant. Both of these motions were properly filed prior to the

motion deadline. The instant motion, however, was not filed until after the evidentiary hearing

and after the pretrial motion deadline. The government, however, has responded to defendant's

motion and, therefore, the Court will consider it. Upon consideration of the pleadings, the

evidence presented at the hearing, and arguments of counsel, the Magistrate Judge is of the

opinion defendant's motion to suppress statements should be GRANTED, IN PART, and

DENIED, IN PART.


I.
FACTUAL BACKGROUND

On January 11, 2013, U.S. Postal Inspectors Jason Russell and Marcus Daly arrested

defendant at his residence on narcotics charges.  While at the residence, all communications

between the agents and the defendant prior to, during, and after his arrest were conducted in

English.  At the time of his arrest, defendant was not advised of his rights under *Miranda v.*

*Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Postal Inspector Russell transported defendant to the Texas Department of Public Safety

building for questioning.  Defendant was taken to an office and uncuffed.  In the office were

Inspector Russell, DPS Officer Jason Lindley, and defendant Monarrez-Mendoza.  Before

beginning the interview, Russell advised defendant of his rights in English.  At that point, the

defendant advised the officers he would like someone who could speak Spanish to assist him.

The officers initially indicated they were surprised by his request since they had been conversing

with the defendant in English up to that point.  In any event, a Spanish-speaking law

enforcement officer was requested and, after about twenty-five minutes, Trooper Gabriel

Medrano came to the office.  While waiting for Medrano to arrive, Russell began obtaining data

from defendant, including his date of birth, address, employment, citizenship status, length of

residency, and names of his family members.  Russell also inspected defendant's driver's

license.  All of Russell's questions and comments were in English and most of defendant's

statements were in English.  Russell then again asked defendant if he understood his rights and

explained he could not discuss the matters related to his arrest until the defendant indicated he

understood his rights.  When defendant questioned Russell concerning the extent of his rights,

Russell explained they would wait until the interpreter arrived.  Russell and Lindley continued to

speak with the defendant in English, but the conversation was basically small talk about subjects

unrelated to the criminal offense such as defendant's work, his employees and children,

Russell's vacation trip to Mexico and various Mexican foods.  This conversation lasted for over 20 minutes until Trooper Medrano arrived.

When Trooper Medrano arrived, he verbally advised defendant of each of his rights in Spanish and provided defendant with a written version of his *Miranda* rights in Spanish. Although the recording is not absolutely clear, Trooper Medrano stated the defendant said he understood his rights and had read them, but when presented with the waiver of rights form, the defendant declined to sign the waiver.

Prior to beginning questioning, Russell advised defendant he could speak in English when he was able, but that the Spanish speaking officer would be there if needed.  Russell explained in English they wanted to question him about mail being delivered to the Arthur Street address.  The interview began with Russell asking questions in English, and defendant replying in both English and Spanish, with Medrano interpreting any of defendant's replies in Spanish to English.  Although Medrano was present to interpret Russell's questions into Spanish, defendant appeared to understand the questions in English as indicated by his responsive answers.  Russell continued to speak with and question defendant in English, with defendant responding predominately in English.  During the interview, defendant made few, if any, inculpatory statements.  He basically denied any wrong doing, proclaimed his innocence, denied approaching the mail carrier to inquire about mail delivery to the address where the controlled delivery took place, and repeatedly denied calling the individual who picked up the package of methamphetamine more than three times.  Defendant also stated he had deactivated the phone he

had used to call his employee because a law enforcement officer had called and harassed him the

day of his employee's arrest.  At no time during the interview did defendant complain he did not

understand Russell's questions.

Although defendant, in his motion, asserts he mentioned "several times" the Spanish

word for attorney during the interview, the defendant has not presented, as a ground for

suppression, any claim that he invoked his right to counsel prior to the end of the interview.

## II.
## ADMISSIBILITY OF STATEMENTS

Defendant seeks to suppress: (1) the statements he made while in custody prior to

defendant being *Mirandized* in Spanish (First Statements); and (2) statements made after being

*Mirandized* in Spanish, but which he contends were not freely or knowingly made (Second

Statements).

As mentioned above, the motion was not pending when the hearing was held.  The

evidentiary hearing was scheduled to consider two motions to suppress filed by defendant

Monarrez-Mendoza:  a motion to suppress an out-of-court identification and a motion to

suppress evidence seized during a search of defendant's residence.  Since the instant motion to

suppress statements was not pending at the time of the evidentiary hearing, the presentation of

the evidence did not focus on the yet to be filed motion or the issues presented here.  Further, no

transcript of the interview between Inspector Russell, DPS Officer Lindley, DPS Trooper

Medrano, and the defendant has been prepared by either party.  An audio of the interview was

played at the evidentiary hearing (Government's Exhibit 11), but that audio was offered by the

government on the issue of the defendant's ability to speak and understand English, not on the

issue of *Miranda*.  Whether it is the government or the defendant, it is up to the parties to present the specifics of their argument and identify the evidence supporting their positions.  If there are portions of the audio (Exhibit 11) which support a party's position, it is the responsibility of that party to identify and present to the Court the exact portion of the interview they contend supports their argument.  The Court declines any invitation to listen to the audio and make either party's arguments for them.

In addressing the merits of the motion, the government bears the burden of showing that a defendant was informed of his rights and that his waiver of those rights and any resulting inculpatory statements were voluntary.  *United States v. Collins*, 40 F.3d 95, 98 (5th Cir.1994), *cert. denied*, 514 U.S. 1121, 115 S.Ct. 1986, 131 L.Ed.2d 873 (1995); *United States v. Rojas-Martinez*, 968 F.2d 415, 417 (5th Cir.), *cert. denied sub nom.*, 506 U.S. 1039, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992).  The standard for determining whether a statement was voluntarily made is whether, taking into consideration the "totality of the circumstances," the accused spoke as a result of his free and rational choice, with an awareness of his abandonment of the right to remain silent and of the consequences of that decision.  *United States v. Ornelas-Rodriguez*, 12 F.3d 1339, 1347 (5th Cir.1994), *cert. denied*, 513 U.S. 830, 115 S.Ct. 103, 130 L.Ed.2d 51 (1994).

<u>First Statements</u>

Defendant contends statements made while awaiting the interpreter should be suppressed as they were made without defendant being warned of his *Miranda* rights, while defendant was in custody, and prior to defendant hearing his rights in Spanish as he had requested.  Defendant also argues the continued conversation was an improper attempt by law enforcement to illustrate

defendant's understanding and ability to speak English.

The government contends statements made by defendant prior to Trooper Medrano's arrival should not be suppressed because defendant had been advised of his rights in English and any statements made were voluntary.  The government contends the audio recording of the interview reflects defendant speaks and understands English, and that defendant understood the rights and warnings Russell gave him in English.  The government contends defendant freely and voluntarily answered questions posed to him.

Additionally and/or alternatively, the government contends defendant's statements should not be suppressed because Russell's questioning of defendant prior to Medrano's arrival was an exception to *Miranda* requirements.  The government contends Russell's questions to defendant were routine booking questions seeking primarily biographical information and were not intended to elicit incriminating responses.  The government notes *Miranda* warnings are only required prior to custodial interrogation by law enforcement, and that routine booking questions are not considered interrogation requiring *Miranda* warnings.  The defendant has not replied to this argument.

The critical question is not whether defendant understood his rights, but whether he waived them.  If the defendant did not waive his *Miranda* rights, then the issue of whether he understood them is moot.  The Court finds that even though defendant was warned of his rights in English and appears to have a fair command of the English language, he did not waive his *Miranda* rights and his request for a Spanish interpreter put law enforcement on notice that defendant was not making a knowing waiver of his rights.  Stated differently, defendant's request for an interpreter, especially with the absence of a waiver of rights, was, in essence, a

request to not be questioned without an interpreter present.  Consequently, any responses to any

questions, words, or actions the officers knew, or reasonably should have known, were likely to

elicit an incriminating response should be excluded.  The undersigned further finds, however,

that the biographical questioning, concerning defendant's full name, date of birth, addresses and

length of residency at the addresses, was more akin to questions that fall within a "routine

booking question" exception from *Miranda*'s applicability, *i.e.*, questions to secure the

"biographical data necessary to complete booking or pretrial services."  *See Pennsylvania v.*

*Muniz*, 496 U.S. 582, 600-02, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990).  These questions do

appear reasonably related to the officer's administrative concerns.  It is clear the interrogating

officer, Inspector Russell, did not consider the biographical and personal history questions to be

a part of a custodial interrogation about the offense.  This is evidenced by Inspector Russell's

reply to defendant's question about the reason for his arrest.  Russell reiterated that he could not

discuss that subject until defendant understood his rights.  The undersigned finds the booking

questions asked prior to defendant being advised of his rights in Spanish fall outside the

protections of *Miranda* and the defendant's answers to those "booking" questions should not be

suppressed.  Any questioning or statements outside those booking questions was done without a

waiver by defendant and should be suppressed.

To the extent defendant alleges the statements made while awaiting the interpreter were

the result of some sort of government "misconduct," the undersigned is of the opinion such

allegation is speculative and has no evidentiary support.  The fact that the government used

Exhibit 11 during the evidentiary hearing to show defendant understands English does not

establish such was the inspector's objective when conducting the post-arrest interview of the

defendant.  The undersigned does not find the continued conversation was intended to demonstrate defendant's English comprehension.

Second Statements

Defendant next contends the continued interrogation in English, without translation, thwarted the use of the interpreter and did not allow for a clear translation, leaving the defendant confused.  It is noted that the defendant does not claim he invoked his right to counsel and that the authorities ignored it.  Instead, defendant seeks suppression of the "Second Statements" based upon coercion or compulsion.

As stated previously, there is no written translation of what Spanish words defendant spoke, and what translation of those words was done by Trooper Medrano.  Defendant points to the conclusion of the interview, when Medrano summarized the substance of the interview to defendant, as indicating the interview was "misunderstood and flawed" due to the tactics employed by the officers.  Defendant concludes all statements he gave in English were improperly coerced and in violation of his right against self-incrimination and right to counsel.[1]

The government contends defendant was afforded the Constitutional rights required by *Miranda* when he was advised of his rights in Spanish, orally by Medrano and then in writing. The government notes the Spanish-speaking officer was present to assist defendant if he needed interpretation assistance, but that defendant made appropriate responses to the questions in English obviating the need for interpretation and indicating he understood the questions.  The government maintains defendant did not exercise his rights to terminate the interview and have a

---

[1]Defendant's claims that his statements should be suppressed as the fruits of an illegal search are addressed in a separate Report and Recommendation.

lawyer present until late in the interview, and that when he did indicate he wanted an attorney, all questioning ceased.

The audio tape admitted at the evidentiary hearing as Government's Exhibit 11 reflects defendant did not ask for any interpretation of the questions posed to him in English by Russell, nor did he indicate any inability to understand the questions.  Instead, defendant responded quickly to the questions, both in English and in Spanish, and such responses were appropriate to the questions asked.  The summarization by Medrano at the conclusion of the interview has not been sufficiently shown to demonstrate defendant did not understand the questions posed to him by Russell.  Defendant has not shown communication between defendant and the officers was compromised by any inadequacy of interpretation.  Defendant's responses were primarily denials of culpability and of the evidence the officers presented, or claims of no knowledge of the evidence.  Defendant has not shown such responses were the result of coercion on the part of the officers, or involuntary in any way.  The undersigned finds no constitutional error in the manner of questioning with regard to defendant's "Second Statements."  Basically, while the defendant presents speculation or an argument that he might not have understood some of the questions, he has not submitted competent evidence to support any such claim.

Although not asserted as a ground for relief, defendant, in the body of his motion to suppress, contends that the defendant, while speaking in his native language, mentions several times "abogado," the Spanish word for attorney, yet no statement regarding any attorney is translated back to the interrogating officers.

Some portions of the audio and of several exchanges during the interview are not particularly clear.  There are times, however, during the interview when the defendant uses the word "attorney" and generally such reference appears to be in relation to a question by defendant of whether he needs an attorney.  The government has taken the position that the defendant never invoked his right to counsel until the end of the interview when, upon invoking his right to counsel, the officers terminated the interview.

If there is, in fact, an issue whether the defendant invoked his right to counsel prior to the end of the interview, it is not alleged as any part of the motion to suppress and any such claim has not been presented as a ground for suppression.  Consequently, the undersigned finds the defendant has waived, at least at the pretrial stage, any argument that he invoked his right to counsel prior to the termination of the interview.  Alternatively, the Court finds that the defendant has failed to meet his burden to show he invoked his right to counsel prior to the termination of the interview.  Based on the foregoing, it is the finding and opinion of the undersigned that defendant's "Second Statements" should not be suppressed.[2]

III.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the motion to suppress statements filed by defendant MARCOS ANTONIO MONARREZ-MENDOZA be DENIED.

---

[2]The defendant does not argue his refusal to sign the waiver of rights constitutes a ground for suppression.  Further, the mere refusal to sign a written waiver does not automatically render inadmissible all further statements made by the defendant. *U.S. v. Chapa-Garza*, 62 F.3d 118, 122 (5th Cir. 1995) (*citing United States v. McDaniel*, 463 F.2d 129, 135 (5th Cir. 1972); *see Berghuis*, 130 S.Ct. at 2262.  Indeed, "[a] refusal to sign a waiver may indicate nothing more than a reluctance to put pen to paper under the circumstances of custody."  *McDaniel*, 463 F.2d at 135; *see Berghuis*, 130 S.Ct. at 2264.

IV.

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 8th day of March 2013.

_CLINTON E. AVERITTE_
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* <u>NOTICE OF RIGHT TO OBJECT</u> \***

Any party may object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  This case is set for docket call on Monday, March 18, 2013, and trial on Tuesday, March 19, 2013. Therefore, all objections must be filed **on or before Wednesday, March 13, 2013.**

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).